### E. S. CARREL v. THE STATE.

#### No. 3639.    Decided June 23, 1915.

**1.—Aggravated Assault—Sufficiency of the Evidence.**

Where, upon trial of aggravated assault, the evidence showed that defendant had given the temporary custody of his infant child to the prosecuting witness, and that it became a question thereafter whether defendant was entitled to its custody, and the matter was pending in the court, defendant had no right to use violence upon the prosecutrix to repossess himself of the child, even though he was legally entitled to its custody.

**2.—Same—Evidence—Cross-examination—Custody of Child.**

Where, upon trial of aggravated assault, the defendant cross-examined prosecutrix fully as to how she came into custody of the child, etc., there was no error in sustaining an objection to the question as to what right she had to such custody.

**3.—Same—Accident—Innocent Intention—Charge of Court.**

Where, upon trial of aggravated assault, the evidence raised the issue that the alleged blow was accidental or unintentional, the court should have submitted the same to the jury as requested.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of aggravated assault; penalty, thirty days imprisonment in the county jail.

The opinion states the case.

*Graves & Houtchens,* for appellant.—On question of custody of child: State ex rel. Wood v. Deaton, 54 S. W. Rep., 901; Walker v. Finney, 157 S. W. Rep., 948.

On question of accidental and unintentional injury: Menach v. State, 97 S. W. Rep., 503; Ware v. State, 24 Texas Crim. App., 521; Ownes v. State, 136 S. W. Rep., 1057; Atkinson v. State, 138 S. W. Rep., 125; Floyd v. State, 15 S. W. Rep., 819.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of making an assault on Mrs. J. S. Nash, and his punishment assessed at thirty days imprisonment in the county jail.

The evidence would show that appellant came to Fort Worth and had with him a six-year-old child. That he took sick and was confined in the hospital. While in the hospital he turned the child over to Mrs. Nash to be taken care of. Mrs. Nash says she took pity on the child, and upon appellant giving her a written agreement that she could take and keep the child until he got able to leave the hospital and was able to work and take care of the child, she took it. She says when appellant left the hospital she got some work for him at the Park hotel whereby he could pay his room rent. After this appellant was arrested, charged with vagrancy and placed in jail. It appears he was left there some days without being tried, when he sued out a writ of habeas corpus asking for his release before Judge Swayne. At the hearing it was agreed by the attorneys that Judge Swayne should release appellant, but Mrs. Nash was to keep the child until the charge of vagrancy was finally disposed of, and this charge was agreed to be taken up on the following Monday. There being no jury in attendance, the case could not be tried, and the prosecuting officer told appellant's counsel that he would dismiss the vagrancy charge if appellant would not molest the custody of the child until it could be determined whether or not he was entitled to its custody. As soon as this conversation had taken place between the county attorney and appellant's counsel, they called Mrs. Nash and demanded that she surrender the child to appellant. This she declined to do, giving as her reason that she had been instructed by the court not to do so, and she would not surrender the child until she saw Judge Swayne and the deputy county attorney looking after this matter, Mr. Phillips.

Appellant through his attorneys then sued out a writ of habeas corpus before Judge Young, who informed them he could not hear the case until the following Saturday. A complaint was then filed charging the child with being a delinquent child.

When proceedings had reached this stage appellant, from the record, acting under the advice of his counsel, secured a taxicab and drove to the store of Mr. McDaniel, where Mrs. McDaniel and Mrs. Nash had gone with the child. As these ladies were leaving the store appellant grabbed the child and undertook to take it away from the ladies. However, they held on to the child, and Mrs. McDaniels and Mrs. Nash both testify that appellant struck Mrs. Nash a blow on the breast, which Mrs. Nash says almost knocked her down; that her lungs hurt her for several days on account of the blow. At this time Mr. McDaniel rushed to the relief of the ladies, and appellant jumped in the taxicab and drove off.

Appellant testifies to getting the taxicab and going after the child. That he did try to take the child away from the ladies, believing he had a right to do so, as he says it was his child, but he denies striking Mrs. Nash, and says if he did strike her it was by reason of being knocked up against her by Mr. McDaniel when he came to the relief of the ladies.

The main contention of appellant is, that he had the right to use all necessary force to regain possession of his child, and if he did strike

Mrs. Nash he was using no greater force than seemed to him to be necessary to accomplish that purpose. The question is, under the circumstances in this case did appellant have the right to use violence to repossess himself of the child, even though he was legally entitled to its custody? He knew the officers in Fort Worth doubted his right to the custody of the child; that they were investigating the matter. He had voluntarily turned it over to Mrs. Nash, and had agreed that she should keep it until the following Monday at least, in open court, if he did not agree that it should be kept until the vagrancy charge was finally disposed of. He also knew on Monday that Mrs. Nash was only keeping the child at the request of the officers, and she told him that if Judge Swayne and the deputy county attorney said so, she would surrender the child to him. He sued out a writ for the custody of the child, but when he learns that this can not be heard until the following Saturday, he does not go to Judge Swayne nor the deputy county attorney and ask them why they had instructed Mrs. Nash to keep the child, if his agreement was only that she should keep it until Monday.. Instead of doing so, he gets a taxicab, hunts up the lady, and undertakes to take it by force. A person may have a perfectly legal right, but he can not use force to obtain his rights if another is in possession. Our law does not sanction this. If he could have obtained possession of the child without the use of violence, he had a right to do so, but he had no right to use violence to obtain possession. If he had been in ·possession of the child, he would have the right to use all necessary force to retain its custody, but a different rule prevails where another is in possession, for no one has the right to use violence to another to gain a right he believes himself entitled to.. His whole course and conduct on this occasion tended to show that he did not believe his acts were within the pale of the law. He had no right to strike Mrs. Nash under the circumstances.

In a bill it is shown that appellant asked Mrs. Nash, "What right did you have to the custody of Roy as against Mr. Carrel?" The court sustained an objection to this question. As Mrs. Nash had detailed fully on cross-examination, at the request of appellant, how she came in custody of the child; why she kept him, and all in detail, there was no error in the ruling of the court.

However, appellant testified that Roy was his son, and that on April 14, 1915, he attempted to regain custody of the child. But he says he did not strike Mrs. Nash intentionally. That while he was trying to take the child, the woman screamed and a man rushed up and struck him a blow on the side of the neck; that this blow knocked him up against someone, and it may have been this blow knocked him against her. M. M. Hays swears that appellant did not intentionally strike Mrs. Nash; that he saw McDaniel strike appellant. Appellant requested the court to instruct the jury: "There can be no assault unless the violence inflicted was unlawful and intentional, and if violence was inflicted, if it is done accidentally or unintentionally, the person inflicting such violence is not guilty of an assault, and you are instructed that

you must acquit appellant, if you believe from the evidence that the said violence, if any, was unintentional and accidental."

We are of the opinion the issue of an accidental or unintentional blow should have been submitted to the jury. It was raised by the testimony offered in behalf of appellant, and because it was not done the case should be reversed and remanded.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*